WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Saruany Rubalcava, | No. CV-24-02946-PHX-MTL |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

At issue is the Social Security Administration's ("SSA") denial of Plaintiff Saruany Rubalcava's application for Title II disability insurance benefits under the Social Security Act. Plaintiff filed a complaint (Doc. 1) with the Court seeking review of his claim. The Court has reviewed the briefs (Docs. 9, 13, 14) and the administrative record (Doc. 8 "A.R.") and now affirms the Administrative Law Judge's ("ALJ") decision.

**I.   BACKGROUND**

Plaintiff filed an application for disability insurance benefits in November of 2019 for a period of disability beginning on March 19, 2019. (A.R. at 350.) The SSA initially denied his claim on August 18, 2022. (*Id.* at 124-41.) Plaintiff appealed the unfavorable decision and the SSA Appeals Council vacated the 2022 decision, remanding Plaintiff's claim to an ALJ on May 24, 2023. (*Id.* at 142-47.) The SSA subsequently issued another unfavorable decision on April 25, 2024. (*Id.* at 13-42.) Plaintiff's request for review of the 2024 decision was denied on August 30, 2024. (*Id.* at 1.) This appeal followed.

The Court has reviewed the record and will discuss the pertinent evidence in

addressing the issues raised by the parties. Upon considering the medical evidence and opinions, the ALJ evaluated Plaintiff's disability claim based on the following severe impairments: lumbar radiculopathy, right rotator cuff tendonitis, osteoarthritis, hypertension, and obesity. (*Id.* at 20.)

The ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments of 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 24.) Next, the ALJ determined Plaintiff's residual functional capacity ("RFC"). The ALJ found:

> [T]he claimant has the [RFC] to perform light work as defined in 20 CFR 404.1567(b) except he can lift and carry 20 pounds occasionally and 10 pounds frequently. He can stand and or walk with normal breaks for two hours and sit six hours with normal breaks in an eight-hour day. He can occasionally climb ramps and stairs and never climb ladders[,] ropes[,] and scaffolds. He can frequently balance. The claimant can occasionally stoop, kneel, crouch and crawl. The claimant should avoid hazards, such as moving machinery and unprotected heights.

(*Id.* at 25-26.) Based on this RFC, the ALJ found the Plaintiff could perform past relevant work. (*Id.* at 34.) Consequently, the ALJ concluded the Plaintiff was not disabled under §§ 261(i) and 223(d) of the Social Security Act. (*Id.* at 35.)

**II.    LEGAL STANDARD**

This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). When reviewing an ALJ's decision, a district court only reviews the issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). In reviewing those issues, the court "look[s] to *all* the pages of [an] ALJ's decision." *Kaufmann v. Kijakazi*, 32 F.4th 843, 851 (9th Cir. 2022). An ALJ is the ultimate finder of fact and is responsible for resolving ambiguities, determining credibility, and resolving conflicts in medical testimony. 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."); *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

The Court may set aside the Commissioner's determination only if it is not

supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the entire record. *Id.* To determine whether substantial evidence supports a decision, the Court must consider the entire record and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* (citation omitted). The substantial evidence threshold "defers to the presiding ALJ, who has seen the hearing up close." *Biestek v. Berryhill*, 587 U.S. 97, 108 (2019). If "the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citation omitted).

To determine whether a claimant is disabled, the ALJ follows a five-step process. 20 C.F.R. § 416.920(a)(4). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at the fifth step. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(i), (b). If so, the claimant is not disabled, and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. *Id.* § 416.920(a)(4)(ii), (c). If not, the claimant is not disabled, and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id.* § 416.920(a)(4)(iii), (d). If so, the claimant is automatically found to be disabled. *Id.* At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. *Id.* § 416.920(a)(4)(iv), (e). If so, the claimant is not disabled, and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where the ALJ determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. *Id.* § 416.920(a)(4)(v), (f). If not, the claimant is disabled. *Id.*

## III. DISCUSSION

Plaintiff raises two issues before the Court. First, Plaintiff argues the ALJ erred by rejecting the opinion of Dr. Cuauhtémoc Gallardo-Prado without providing sufficient explanation supported by substantial evidence. (Doc. 9 at 11-19; Doc. 14 at 4-7.) Second, Plaintiff argues the ALJ erred in rejecting his symptom testimony in the absence of specific, clear, and convincing reasons supported by substantial evidence. (Doc. 9 at 19-24; Doc. 14 at 7-10.)

### A. Medical Opinion Evidence

Plaintiff argues that the ALJ committed materially harmful error when they rejected Dr. Gallardo-Prado's assessment without sufficient explanation supported by substantial evidence. (Doc. 9 at 11-19; Doc. 14 at 4-7.)

The ALJ must consider all opinion evidence and determine the persuasiveness of each medical opinion's findings based on factors outlined in the regulations. 20 C.F.R. § 404.1520c(a)-(b); *see Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) ("The agency must articulate how persuasive it finds all of the medical opinions from each doctor or other source and explain how it considered the supportability and consistency factors in reaching these findings." (citation modified)). The most important factors ALJs consider are "consistency" and "supportability." 20 C.F.R. § 404.1520c(b)(2). "Supportability" is evaluated by considering the evidence intrinsic to the medical opinion. *Id.* § 404.1520c(c)(1). "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." *Id.* In contrast, "consistency" focuses on evidence extrinsic to the medical opinion, requiring adjudicators to evaluate the consistency between the medical opinion and other evidence in the record. *Id.* § 404.1520c(c)(2). The ALJ may also consider, to a lesser degree, other factors such as the length and purpose of the treatment relationship, the kinds of examinations performed, and whether the medical source personally examined the claimant. *Woods*, 32 F.4th at 792.

An ALJ "need not take every medical opinion at face value." *Cross v. O'Malley*, 89

F.4th 1211, 1213 (9th Cir. 2024) (citation modified). Yet, "[e]ven under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods*, 32 F.4th at 792. Substantial evidence "is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Orn*, 495 F.3d at 630 (citation modified). The substantial evidence standard "is an extremely deferential standard." *Thomas v. CalPortland Co.*, 993 F.3d 1204, 1208 (9th Cir. 2021). And "where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." *Shaibi v. Berryhill*, 883 F.3d 1102, 1107 (9th Cir. 2017) (citation modified).

Here, the ALJ found Dr. Gallardo-Prado's medical opinion unpersuasive. (A.R. at 33-34.) Dr. Gallardo-Prado examined Plaintiff in July of 2022 "to assess his ability to perform work activity." (*Id.* at 33, 1059.) Dr. Gallardo-Prado concluded Plaintiff suffered from "chronic lumbar pain, degenerative disc disease of the lumbar spine, lumbar radiculopathy, lumbar facet arthropathy, a major depressive disorder and history of asthma." (*Id.* at 33, 1062-63.)

Based on his examination, Dr. Gallardo-Prado determined the Plaintiff had "limitations and/or activity restrictions related to his medical condition, that inhibit his ability to perform gainful employment." (*Id.* at 1063.) Specifically, he opined:

> [T]he [Plaintiff] could sit two hours in an eight-hour day and stand/walk more than two, but less than three hours in an eight-hour day. He could lift and carry more than 15 pounds but less than 20 pounds. . . . [I]t was medically necessary for the claimant to alternate between sitting, standing or walking and that he should alternate positions every 21 to 45 minutes and rest for 15 minutes with position changes. He could bend and stoop less than occasionally, use his left foot occasionally and reach occasionally. He could frequently use his hands and right foot. . . . [T]he claimant's impairments caused cognitive or pace limitations that inhibited the completion of more than one and two step job duties over an eight-hour day and that the limitation would cause interruption of a work pace with the claimant being off task to a moderately severe degree. . . . [T]he claimant's impairments would result in, cause or contribute to headaches or mental fatigue more than four times per month and he would need to rest for one to two hours at a time and would miss work four to five days per month.

(*Id.* at 33; *see id.* at 1064-65.)

The ALJ found that, while "fairly supported by the examination," Dr. Gallardo-Prado's medical opinion was "not consistent with the evidence as a whole." (*Id.* at 33.) The ALJ explained Dr. Gallardo-Prado's observations of the Plaintiff were inconsistent with the longitudinal medical evidence found throughout Plaintiff's medical records. (*Id.*) Dr. Gallardo-Prado observed Plaintiff exhibited "tenderness to palpation and decreased range of motion to the lumbar spine, an inability to toe-walk at all on the left, difficulty with heel walk, broad-based gait and positively straight leg raise." (*Id.* at 33, 1060-1062.) These observations conflict with the Plaintiff's medical records, which "largely show negative straight left raise, normal sensation, steady and/or upright gait and station without antalgia, as well as normal strength in the bilateral upper and lower extremities." (*Id.* at 33 (citing numerous examples in the record).) Dr. Gallardo-Prado's opinion also differs from the treating physicians' opinions, who opined less limitations than Dr. Gallardo-Prado. (*Id.* at 34.) The ALJ further clarified Dr. Gallardo-Prado was "an examining physician who had never treated the claimant." (*Id.* at 33); *see Woods*, 32 F.4th at 791 ("The ALJ gives more weight to medical opinions from the claimant's treating sources . . . ." (citation modified)).

The ALJ also focused on the lack of indications that Dr. Gallardo-Prado considered other relevant evidence in the record when evaluating the Plaintiff. (A.R. at 33; *see id.* at 1059-63.) There was no indication Dr. Gallardo-Prado considered the Plaintiff's prior treatment from 2020, "which indicated the [Plaintiff] was not compliant with his treating physicians' recommendations regarding medication." (*Id.* at 33; *see id.* at 1059-65.) As the ALJ addressed earlier in their opinion, "[i]f [Plaintiff] [was] experiencing disabling pain, it would be reasonable to expect him to follow his pain management provider's instruction regarding medication." (*Id.* at 31); *see Kaufmann*, 32 F.4th at 851 (a reviewing court looks to "*all* the pages of the ALJ's decision"). Moreover, Plaintiff previously "reported improvement with treatment to his treating medical providers," (A.R. at 32, 34), which the ALJ explained "tends to indicate [Plaintiff] was not as limited as alleged." (*Id.* at 34.)

The ALJ explained that there was no indication that Dr. Gallardo-Prado considered

Plaintiff's activity levels. (*Id.* at 33.) Namely, the Plaintiff "has served as a caregiver to his grandmother and aunt . . . [and] supervising would not necessarily allow for the restrictions noted." (*Id.* at 33-34; *see also id.* at 25.) The ALJ also noted the Plaintiff engaged in other activities inconsistent with Dr. Gallardo-Prado's opinion: helped his brother move; traveled to Mexico; independently prepares simple meals; drives; and plays video games. (*Id.* at 22, 30-31.)

Contrary to Plaintiff's assertions (Doc. 9 at 11-19; Doc. 14 at 4-7), the ALJ properly explained why they found Dr. Gallardo-Prado's medical opinion inconsistent. As discussed, the ALJ compared Dr. Gallardo-Prado's opinion with objective medical records, treating physician opinions, Plaintiff's activity levels, and Plaintiff's history of non-compliance with treatment recommendations. (*See* A.R. at 30-34.) The ALJ described the diagnoses, recommendations, and Plaintiff's conduct that appeared consistently (or "largely") throughout the record, pinpointing how Dr. Gallardo-Prado's opinion conflicted with each. (*See id.*) The Court therefore finds substantial evidence supports the ALJ's finding that Dr. Gallardo-Prado's medical opinion was unpersuasive due to this lack of consistency. *See Woods*, 32 F.4th at 792-93 & n.4 (affirming an ALJ's finding that a medical opinion was unpersuasive because it was inconsistent, though it was supported by relevant objective medical evidence).

Plaintiff also takes issue with the ALJ's finding of inconsistency despite finding the Dr. Galardo-Prado's findings were "fairly supported." (Doc. 14 at 4-5; A.R. at 33.) These are different inquiries, however. *See* 20 C.F.R. § 404.1520c(c)(1), (2). The ALJ properly looked to the evidence intrinsic to the medical opinion when determining supportability and looked to the evidence extrinsic to the medical opinion (the totality of the medical record and other evidence in the record) when determining consistency. (A.R. at 33); *see* 20 C.F.R. § 404.1520c(c)(1), (2).

Plaintiff further contends the ALJ improperly assessed Dr. Gallardo-Prado's testimony in the context of other evidence in the record. (Doc. 9 at 14-19.). But, as the Commissioner explains, "Plaintiff has presented an alternative interpretation of the

evidence . . . [but] it is the ALJ's interpretation that is entitled to deference." (Doc. 13 at 10); *see Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008); *CalPortland Co.*, 993 F.3d at 1208 (noting substantial evidence "is an extremely deferential standard"). For the reasons above, the ALJ's finding that Dr. Gallardo-Prado's medical opinion was unpersuasive because it was inconsistent is supported by substantial evidence and must be upheld. *See Woods*, 32 F. 4th at 792-93 & n.4.

### B.     Symptom Testimony

Plaintiff next argues that the ALJ erred in rejecting his symptom testimony without providing clear and convincing reasons. (Doc. 9 at 19.)

An ALJ employs a two-step process in evaluating a claimant's symptom testimony. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). First, the ALJ considers whether the claimant has presented objective medical evidence of an impairment that "could reasonably be expected to produce some degree of the pain and symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). Second, if no evidence of malingering exists, the ALJ evaluates the claimant's statements in the context of the objective medical evidence and other evidence in the record. *See* C.F.R. § 404.1529(c)(2)-(3). Following this evaluation, "the ALJ can reject the claimant's testimony about the severity of [their] symptoms only by offering specific, clear and convincing reasons for doing so." *Garrison*, 759 F.3d at 1014-15 (citation omitted).

This "clear and convincing standard" is not easily met; rather, it "is the most demanding required in Social Security cases." *Id.* at 1015 (citation omitted). Despite this heightened standard, the ALJ need not "believe every allegation of disabling pain." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989), *superseded on other grounds by*, 20 C.F.R. § 404.1502(a). Instead, when assessing the claimant's credibility, the ALJ may consider "inconsistencies either in [the claimant's] testimony or between [his] testimony and [his] conduct, [claimant's] daily activities, [his] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [the claimant] complaints." *Thomas*, 278 F.3d at 958-59 (citation omitted). If the district court

- 8 -

finds that the ALJ's specific, clear, and convincing reasons are supported by substantial evidence, the court must not second guess the ALJ's judgment and should affirm the ALJ's decision. *See Fair*, 885 F.2d at 604.

Here, the ALJ appropriately followed the two-step analysis when evaluating, and ultimately discounting, Plaintiff's testimony. In the first step, the ALJ found "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms." (A.R. at 34.) In evaluating the second step, however, the ALJ found "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence and other evidence in the record." (*Id.*)

The ALJ offered specific, clear, and convincing examples of Plaintiff's testimony contrasting with the medical record. *See Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022) ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony." (citation omitted)). Plaintiff's examinations revealed normal strength, normal gait and station, normal sensation, and no significant decreased muscle mass. (A.R. at 29-30.) The ALJ showed these findings were inconsistent with Plaintiff's symptom testimony, including lying in bed on his phone all day and being unable to stand for more than fifteen minutes or walk for more than five-to-ten minutes. (*Id.* at 30.) Furthermore, despite Plaintiff reporting continued disabling symptoms, the records show Plaintiff "responded well to treatment" and reported his "medication made his pain symptoms more tolerable and was improving his functional ability including activities of daily living." (*Id.*; *see also id.* at 28-29, 31.)

Plaintiff's reported pain levels are also contradicted by the medical records, which show the Plaintiff's history of noncompliance "with his treating providers' recommendations regarding pain medication." (*Id.* at 31.) The ALJ reasonably found that "[i]f he [was] experiencing disabling pain, it would be reasonable to expect [the Plaintiff] to follow his pain management provider's instructions regarding medication." (*Id.*) Moreover, the Plaintiff "consistently reported medication helped with his symptoms" and

- 9 -

"reported to his health provider his pain was well controlled with medication." (*Id.* at 32.) And while Plaintiff also claimed his pain made him irritable, the ALJ noted Plaintiff "reported to treating mental health providers that he gets along well with his spouse, friends and family." (*Id.* at 31.) Plaintiff also reported experiencing significant adverse side effects from his medication yet consistently denied such side effects to his treating providers. (*Id.* at 28-31.) The ALJ acknowledged, however, that the Plaintiff reported "occasional dry mouth and headache and he was encouraged to drink" more water and take Tylenol for his headaches. (*Id.* at 31.)

The ALJ also offered specific, clear, and convincing examples of Plaintiff's conduct and activity levels contradicting his symptom testimony. *See Smartt*, 53 F.4th at 499 ("Even if the claimant experiences some difficulty or pain, her daily activities may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." (citation modified)). For example, the ALJ noted the following inconsistencies:

> For example, the claimant reported he was unable to perform household chores but on June 7, 2021, he reported no problems with activities of daily living . . . The claimant testified that his grandmother took care of the cooking, but he reported to a treating mental health provider he was planning to document his new planting journey and cooking as new coping skills . . . He testified he had difficulty sleeping due to pain but had reported to his treating mental health provider he was sleeping well . . . .

(A.R. at 31; *see also id.* at 23 (describing Plaintiff's testimony that he cared for his aunt and grandmother, drove "almost every day" in a week in September of 2021, played video games, and watched movies).).

Plaintiff argues the ALJ did not provide "a specific, clear and convincing reason to reject [Plaintiff's] testimony when improvement from pain management procedures was short lived, and improvement from medication did not negate [Plaintiff's] reported ongoing severe pain." (Doc. 14 at 9.) Yet, as discussed above, the ALJ offered specific, clear, and convincing evidence that Plaintiff's testimony conflicts with the medical records, activity levels, and his own testimony. (*See* A.R. at 23, 28-34.) "The 'clear and convincing'

- 10 -

standard requires an ALJ to show his work," and the ALJ has done so here. *Smartt*, 53 F.4th at 499.

Plaintiff further contends the ALJ "failed to link normal examination findings with an explanation as to how they were inconsistent with [Plaintiff's] work-preclusive testimony, and . . . failed to reconcile the positive objective findings and aggressive ordered course of treatment that supported and was consistent with [Plaintiff's] testimony." (Doc. 14 at 8-9.) But the ALJ admits that "there is no question the [Plaintiff] has a history of treatment for pain and impairments which result in work related limitations." (A.R. at 31.) And "[a]ny limitations associated with the claimant's physical impairments [were] taken into consideration in the [RFC] by limiting the claimant to light work, with the noted postural and environmental restrictions." (*Id.* at 30.)

For the above reasons, the ALJ has offered specific, clear and convincing reasons to reject Plaintiff's testimony. Therefore, the Court will not disturb the ALJ's conclusion. *See Tommasetti*, 533 F.3d at 1039 ("If the ALJ's finding is supported by substantial evidence, the court may not engage in second-guessing." (citation modified)).

## IV. CONCLUSION

Accordingly,

**IT IS ORDERED affirming** the April 25, 2024 decision by the Administrative Law Judge and the Commissioner of the Social Security Administration. (A.R. at 13-42.)

**IT IS FURTHER ORDERED** directing the Clerk to enter final judgment consistent with this Order and close this case.

Dated this 3rd day of October, 2025.

Michael T. Liburdi
United States District Judge

- 11 -